THE HUGO KELLER.

(District Court, N. D. New York. December 29, 1898.)

COLLISION—STEAM CANAL BOATS—FAILURE TO PROVIDE LOOKOUT.

The Keller, a steam canal boat, was passing eastward through the Erie Canal; pushing her consort, and having no lookout. She was preceded at a short distance by a horse boat. At a sharp bend in the canal, and while on the south or berme side, the consort collided with and injured the Clytie, which was going westward, also pushing a consort, and with a tow. The tow had not yet passed the horse boat, which compelled the Clytie to keep to the berme side of the canal, which was there about 65 feet wide. *Held*, that the Clytie was not in fault for the collision, but that the Keller was negligent in failing to provide a lookout at such a place, which would have prevented the collision, and in not keeping to the left side of the canal, in the wake of the horse boat.

This was a libel against the steam canal boat Hugo Keller for collision. On final hearing.

On the morning of May 14, 1895, at about 10 o'clock, the libelant's steam canal boat Clytie, pushing her consort the Ryan and towing two other canal boats on a 350-foot hawser, was proceeding westerly from the city of Syracuse on the Erie Canal. The boats were partially loaded. At Geddes, a short distance west from Syracuse, the canal makes a sharp turn towards the north. At this point there is a railroad bridge of the New York Central Railroad crossing the canal diagonally. On the day in question the several canal boats were moored upon the southerly or convex side of the bend. The canal is 75 or 80 feet wide at the top and about 60 feet wide at the bottom. For navigating loaded boats the canal was, therefore, about 65 feet in width. When the Clytie and Ryan had just entered this bend the steam canal boat Hugo Keller, pushing her consort the Archie Farr, appeared in sight. The Keller and the Farr were both heavily loaded and were proceeding easterly towards Syracuse. The danger signal was given from the Clytie which was answered from the Keller and each boat endeavored to stop her headway. The two forward boats came into collision, the impact being of such a character as to damage the bow of the Clytie. The Clytie prior to the time of the accident was proceeding at a speed of about a mile and a quarter per hour and the Keller was proceeding at about the same rate. Just prior to entering the bend the Clytie had met two horse boats and had passed them on the southerly or berme-bank side of the canal. The Keller upon entering the bend had also turned to the right intending to pass any boat which she might encounter there port to port. The libelant charges that the collision

was occasioned solely by the fault of the Keller for the reason that she turned to the right when she should have turned to the left; that she had no proper lookout; that she did not stop and reverse and that she did not answer the Clytie's signals. The answer denies all the allegations of the libel imputing negligence to the Keller and alleges that the collision occurred solely by the negligence of the Clytie in turning to the left when she should have turned to the right and that the Keller did everything which prudence and caution required.

John W. Ingram, for libelant.

Josiah Cook, for claimant.

COXE, District Judge (after stating the facts). Two canal boats cannot collide in broad daylight without some one being at fault. After reading the testimony the court is convinced that the initial fault was with the Keller in failing to provide a lookout. When she entered the bend there was no one within 158 feet of the bow of the Farr. Her master knew that two horse boats were just ahead and should they meet a steamboat the latter would in all probability follow the state statute and take the berme-bank side. He knew also that boats were likely to be moored on that side of the canal. Knowing all this he should have taken at least ordinary precautions. Instead of doing so he entered a sharp and dangerous bend, where it was impossible to see far ahead and where the channel might be completely choked by moored and passing boats, with no lookout and no one on deck but himself; he being in the pilot house. If the Keller had been informed of the situation when she was 158 feet further away the accident would have been averted. As it was the boats had nearly come to a standstill; certainly they could have stopped if there had been 158 feet additional space.

It is not easy to find any act of carelessness on the part of the Clytie which contributed to the collision. She was right in taking the berme side when passing the horse boats; the law required it. As the court understands the testimony the Clytie's tow had not passed the horse boats when the Farr first appeared. It would have been a dangerous maneuver for the Clytie to have taken the tow-path side at this time as it might have involved a collision with the horse boats. On the other hand the tow-path side was entirely clear for the Keller. Had she taken it there could have been no collision. The libelant is entitled to the usual decree with a reference to Robert W. Pomeroy of the Buffalo bar to compute the damages.